Martin J. Barab (State Bar No. 47419)
A. Raymond Hamrick, III (State Bar No. 93821)
Neer Lerner (State Bar No. 266625)
HAMRICK & EVANS, LLP
2600 West Olive Avenue, Suite 1020
Burbank, California 91505
Telephone No.: (818) 763-5292
Fax No.: (818) 763-2308

Attorneys for Plaintiff Movicorp Media, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOVICORP MEDIA, INC., a California corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>LAKESHORE ENTERTAINMENT CORP., a Delaware corporation,<br><br>　　　　　Defendant. | Case No.: 2:19-cv-263<br><br>**COMPLAINT FOR:**<br>1. **COPYRIGHT INFRINGEMENT**<br>2. **UNFAIR COMPETITION**<br>3. **CONVERSION**<br>4. **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Movicorp Media, Inc. alleges as follows:

## PREFATORY ALLEGATIONS

1. This is an action for copyright infringement and related torts arising out of the unlawful misappropriation by Defendant Lakeshore Entertainment Corp. of Plaintiff Movicorp Media, Inc.'s intellectual property relating to the 1988 motion picture *Kandyland*.

## JURISDICTION AND VENUE

2. This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§101 et seq. Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b). In addition, this Court has subject matter jurisdiction over the claims brought under state law under the

doctrine of pendent jurisdiction since the claims under state law arise from the same nucleus of operative facts as the claims under federal law.

3. Plaintiff's claims for relief arose in this district. Venue is appropriate in this district under 28 U.S.C. § §1391(b) and (c), and §1400(a).

## THE PARTIES

4. Plaintiff Movicorp Media, Inc. is a corporation organized and existing under the laws of the state of California, and authorized to do and doing business in the County of Los Angeles, State of California. At all times mentioned herein, Movicorp was and is an entertainment company engaged in the development, distribution, and financing of motion pictures, television programs, and other video content.

5. Movicorp Media, Inc. is informed and believes, and based thereon alleges, that Defendant Lakeshore Entertainment Corp. ("Lakeshore") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located in Los Angeles, California. Lakeshore is authorized to do business and does significant business in the County of Los Angeles, State of California and within this judicial district. Movicorp Media, Inc. is informed and believes, and based thereon allege, that Lakeshore is an independent film distribution company.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

6. In or about 1983, Robert Schnitzer, among others, authored a screenplay entitled *Candyland.* On November 28, 1983, the screenplay was registered with the U.S. Copyright Office, bearing registration number PAU 597-840, identifying Robert Schnitzer Productions, Inc. ("RSP") as author of a "work made for hire."

7. RSP was, at all times mentioned herein, a general partner of Candyland Production Company, a California Limited Partnership ("CPC").

8. On or about July 2, 1986, RSP, as general partner of CPC, executed a license agreement with New World Pictures, Ltd. ("NWP") for the latter to distribute

the yet-to-be-produced theatrical motion picture *Candyland,* including territorial rights in the United States, Canada, and their respective territories and possessions.

9. On August 8, 1986, RSP and NWP executed a modification to the July 2, 1986 distribution agreement, expanding NWP's territorial rights for *Candyland* to the entire world. The July 2, 1986 agreement, as modified on August 8, 1986 to include worldwide rights, is referred to herein as the "NWP Distribution Agreement."

10. On September 30, 1987, the motion picture *Candyland* was registered with the U.S. Copyright Office, registration number PA 367-332, claiming CPC as author, including all cinematographic material except preexisting music.

11. On October 10, 1989, CPC changed its name to Kandyland Production Company, a California Limited Partnership ("KPC").

12. On December 4, 1989, RSP changed its name to Movicorp, Inc., which in turn changed its name to Movicorp Holdings, Inc. in 1992.

13. In 1989 or 1990, Trans Atlantic acquired the NWP film library, including all worldwide rights to exploit *Kandyland.*

14. On June 30, 1992, Movicorp Holdings, Inc. and KPC filed suit against various defendants, including NWP and various Trans Atlantic entities, in connection with the rights to *Kandyland* that were transferred pursuant to the NWP Distribution Agreement. Prior to trial, the parties reached an agreement to settle the lawsuit in its entirety.

15. On November 23, 1993, the parties to the lawsuit executed an Agreement of Settlement and General Release (the "1993 Settlement Agreement"), by which the defendants, including NWP and Trans Atlantic, assigned, transferred, and fully reverted all *Kandyland* rights previously assigned to NWP in the NWP Distribution Agreement (i.e., worldwide rights) to Movicorp Holdings, Inc.

16. In or about December 1993, Movicorp Holdings, Inc. purchased from KPC all copyright and ownership rights in and to *Kandyland* in exchange for valuable consideration.

17. On information and belief, Plaintiff alleges that in or about 1996, Lakeshore acquired Trans Atlantic's rights in the New World library. The assets and rights acquired by Lakeshore did not (and could not) include any rights to the film *Kandyland*, as neither Trans Atlantic nor NWP had any rights to the film by virtue of the 1993 Settlement Agreement, which reverted all rights to *Kandyland* to Movicorp Holdings, Inc. Accordingly, Lakeshore never acquired any rights to *Kandyland,* yet continues to unlawfully exploit it.

18. On April 26, 2007, Movicorp Holdings, Inc. executed an Assignment of Copyright/Trademark[1] granting, assigning, and transferring, *inter alia*, all copyright and other rights to the screenplay *Candyland* and motion picture *Kandyland,* to OTV Media Group, Inc.

19. On August 14, 2015, OTV Media Group, Inc. amended its Articles of Incorporation to change its name to Movicorp Media, Inc.

20. Upon information and belief, Movicorp Media, Inc. alleges that Lakeshore has exploited and continues to exploit *Kandyland* without Movicorp Media, Inc.'s consent, and in violation of Movicorp Media, Inc.'s intellectual property rights.

21. Lakeshore has refused—and continues to refuse—to return the physical materials for *Kandyland*, including without limitation the original film elements, other film, tape, and digital elements and masters, optical and magnetic soundtrack elements, and marketing materials (the "Physical Materials") to Movicorp Media, Inc. Lakeshore has further refused to allow Movicorp Media, Inc. possession or access to the Physical Materials, notwithstanding Movicorp Media, Inc.'s exclusive rights to the Physical Materials pursuant to the 1993 Settlement Agreement.

22. Despite numerous demands by Movicorp Media, Inc., Lakeshore has willfully and maliciously refused to provide Movicorp Media, Inc. with any

---

[1] The Assignment of Copyright/Trademark was attached as Exhibit "B" to the Sales/Purchase of Assets Agreement executed that same date.

accounting of its sales and other activities related to *Kandyland,* or evidence of its "purchase" of the rights to *Kandyland*.

23. Despite receiving and responding to multiple correspondence from Movicorp Media, Inc.'s counsel and representatives demanding that Lakeshore immediately cease the unlawful exploitation of *Kandyland* and return all Physical Materials immediately, Lakeshore has failed to do either, and continues to willfully and maliciously violate Movicorp Media, Inc.'s copyright and to deprive Movicorp Media, Inc. of the Physical Materials it owns.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

24. Movicorp Media, Inc. incorporates by reference and re-alleges paragraphs 1-23 as though fully set forth herein.

25. Movicorp Media, Inc. has exclusive rights and privileges in and to, and is the sole owner and proprietor of all rights, title, and interest, in *Kandyland,* including its Physical Materials.

26. As the owner of all rights, title, and interest in and to the copyright in *Kandyland*, Movicorp Media, Inc. has all the exclusive rights set forth in 17 U.S.C. § 106, including, but not limited to, rights to reproduce and distribute the film. Movicorp Media, Inc. has never granted any such rights to Lakeshore, nor has Lakeshore acquired such rights in any other manner.

27. Movicorp Media, Inc. is informed and believes, and based thereon alleges, that Lakeshore has infringed and intends to continue to infringe upon its copyright in and to *Kandyland*, including exploitation of the film and wrongful withholding of its Physical Materials.

28. As a direct and proximate result of Lakeshore's violation of copyright, Movicorp Media, Inc. has suffered and will continue to suffer substantial injury and damages. Such injuries and damages include but are not limited to the loss of revenues from the distribution and exploitation of *Kandyland*. When the full amount

of Movicorp Media, Inc.'s damages have been ascertained, Movicorp Media, Inc. will seek leave of Court to amend this Complaint to reflect the precise amount of all such damages.

29. Movicorp Media, Inc. is informed and believes and on that basis alleges, that unless enjoined by this Court, Lakeshore intends to continue its wrongful conduct and to infringe, exploit and otherwise profit from its unlawful distribution of *Kandyland*, and to unlawfully withhold the Physical Materials.

30. Movicorp Media, Inc. is entitled to recover from Lakeshore the damages, including attorneys' fees, it sustained and will sustain, and any gains, profits and advantages obtained by Lakeshore as a result of its acts of infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Movicorp Media, Inc., in substantial part because of Lakeshore's failure to provide an accounting despite numerous demands made by Movicorp Media, Inc.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition)

31. Movicorp Media, Inc. incorporates by reference and re-alleges paragraphs 1-30 as though fully set forth herein.

32. The conduct described above constitutes unfair business practices within the meaning of California Business and Professions Code section 17200, et seq.

33. As a direct and proximate result of the conduct of Lakeshore, Lakeshore has received, and continues to receive, the benefit of money and opportunities unfairly and unlawfully obtained.

34. Additionally, Movicorp Media, Inc. has suffered and will continue to suffer substantial economic hardship because it has never received (and will not receive) compensation or any other benefit from the wrongful exploitation by Lakeshore of *Kandyland,* in the absence of an order of this Court.

35. Pursuant to the California Unfair Competition Law, Movicorp Media, Inc. hereby seeks an order that Lakeshore be enjoined from further acts of unfair competition, including:

    a. the continued distribution, exhibition, or exploitation of *Kandyland* in the foreign market or any domestic market;

    b. asserting and/or utilizing in any manner whatsoever any copyright interest in *Kandyland*;

    c. soliciting, distributing, selling, or offering to solicit, distribute, or sell, any product, work, or copyright of Movicorp Media, Inc. arising from or relating in any manner to *Kandyland*; and

    d. continuing to wrongfully withhold the Physical Materials to *Kandlyand.*

36. Pursuant to the California Unfair Competition Law, Movicorp Media, Inc. hereby seeks an order that Lakeshore account for and disgorge all monies it wrongfully obtained (currently and prospectively) through its unfair business practices and immediately return to Movicorp Media, Inc. all Physical Materials.

## THIRD CLAIM FOR RELIEF

### (Conversion)

37. Movicorp Media, Inc. incorporates by reference and re-alleges paragraphs 1-36 as though fully set forth herein.

38. Lakeshore converted and misappropriated Movicorp Media, Inc.'s valuable property rights by exploiting *Kandyland* without having any rights to do so, and without reporting to or compensating Movicorp Media, Inc. in any fashion whatsoever. Lakeshore further converted the Physical Materials to *Kandyland*, and continues to withhold such Physical Materials from Movicorp Media, Inc. without legal basis or justification.

39. By engaging in the conduct alleged above, Lakeshore willfully and maliciously converted to its own use valuable property rights and business

opportunities rightfully belonging to Movicorp Media, Inc. Movicorp Media, Inc. has been damaged and will continue to incur damages by virtue of the wrongful willful conduct of Lakeshore, in an amount to be proven at trial.

40. Lakeshore's willful conversion of Movicorp Media, Inc.'s intellectual property—despite being furnished evidence to the contrary—entitles Movicorp Media to punitive and exemplary damages in an amount to be proven at trial.

## **FOURTH CLAIM FOR RELIEF**

### **(Declaratory Relief)**

41. Movicorp Media, Inc. incorporates by reference and re-alleges paragraphs 1-40 as though fully set forth herein.

42. An actual controversy has arisen and now exists between Movicorp Media, Inc. and Lakeshore concerning their respective rights and duties with respect to the motion picture *Kandyland* and the terms of the 1993 Settlement Agreement in that Movicorp Media, Inc. contends and Lakeshore denies that:

   a. Movicorp Media, Inc. owns all rights (domestic and foreign) to *Kandyland* by virtue of the 1993 Settlement Agreement.

   b. The 1993 Settlement Agreement caused the reversion of all rights to *Kandyland* back to Movicorp Media, Inc.

43. Lakeshore however contends that pursuant to the terms of the 1993 Settlement Agreement it acquired all foreign rights (excluding the rights to exploit *Kandyland* in the U.S. and Canada) as part of its acquisition of the NWP/Trans Atlantic library; and, that it has the right to continue exploiting *Kandyland* exclusively in the foreign territories.

43. Movicorp Media, Inc. desires a judicial determination of these rights and duties, and a declaration as to ownership of the rights to *Kandyland.*

44. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Movicorp Media, Inc. may ascertain and vindicate its rights to *Kandyland*.

## CLAIMS FOR RELIEF

45. For compensatory damages, including, without limitation, all monies derived by Lakeshore through its acts of copyright infringement relating to *Kandyland*.

46. For statutory damages as provided by law;

47. For permanent injunctive relief enjoining any copyright infringement by Lakeshore, and all of its officers, directors, stockholders, owners, partners, agents, servants, employees, representatives, distributors and attorneys, and all those in active concert or participation with Lakeshore, pursuant to 17 U.S.C. § 502, including an order prohibiting Lakeshore from marketing, distributing, broadcasting, exhibiting or otherwise exploiting *Kandyland*;

48. For a declaration of the rights and duties of the parties, and each of them, as set forth herein;

49. For costs of suit incurred herein;

50. For attorneys' fees as provided by law;

51. For delivery to Movicorp Media, Inc. of all Physical Materials;

52. For punitive damages, as provided by law;

53. For interest as provided by law;

54. For such other and further relief as the Court may deem just and proper.

DATED: January 10, 2019

HAMRICK & EVANS, LLP

By: _____
MARTIN J. BARAB
A. RAYMOND HAMRICK, III
NEER LERNER
Attorneys for Movicorp Media, Inc.

## DEMAND FOR JURY TRIAL

Movicorp Media, Inc. hereby demands a jury trial on all issues as permitted by law.

DATED: January 10, 2019        HAMRICK & EVANS, LLP

By: _____
MARTIN J. BARAB
A. RAYMOND HAMRICK, III
NEER LERNER
Attorneys for Movicorp Media, Inc.